IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
IN ADMIRALTY
CASE NO_____

| | |
|---|---|
| SCOTT LINDSEY, ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| UNNAMED 24' 2005 CHAPARRAL ) | |
| SIGNATURE 24 ( NC 4542 DA) (HIN# ) | |
| FGBF1746A505), her gear, tackle, ) | |
| apparel, furniture, engines, fishing ) | |
| history and permits, and ) | **VERIFIED** |
| appurtenances, etc., *in rem*, ) | |
| ) | **COMPLAINT** |
| and ) | |
| ) | |
| JERRY T. DYCUS, *in personam*, ) | |
| ) | |
| Defendants ) | |
| ) | |
| ) | |
| ) | |

Scott Lindsey, by and through his attorneys, files this Complaint, under the general maritime law of the United States, against the **UNNAMED 24' 2005 CHAPARRAL SIGNATURE 24) (NC 4542 DA) (HIN# FGBF1746A505), her gear, tackle, apparel, furniture, engines, fishing history and permits, and other appurtenances, etc.,** (collectively the "Vessel") *in rem*, **and JERRY T. DYCUS ("Dycus),** *in personam*, alleging as follows:

**Jurisdiction, Parties and Venue**

1. This action is brought under Rule 9(h) of the Federal Rules of Civil Procedure, under the Admiralty and Maritime Law of the United States, 28 U.S.C. §1333 and 46

U.S.C. § 30103 *et seq*. It arose out of the run-down by the Vessel operated by Dycus of a recreational Kayak paddled by Plaintiff in the North Carolina Intracoastal Waterway, navigable waters of the United States (the "Run-Down"). Plaintiff suffered severe injuries from this maritime tort which were caused by the negligence of the owner, operator and master of the Vessel as will be more fully described below. Both Defendant Dycus and the Vessel, *in rem*, are jointly and severally liable for the damages caused by this maritime tort.

2. At all times material hereto, Plaintiff Scott Lindsey was an individual resident of Brunswick County, North Carolina.

3. Upon information and belief and at all times material hereto, Defendant Jerry Dycus ("Dycus") was an individual with a residence at 2903 Irwin St., SE, Southport, NC 28461, Brunswick County, North Carolina.

4. Upon information and belief, at all times material hereto, Defendant Dycus was the owner and operator of the Defendant Vessel including at the time of the Run-Down which is the subject of this lawsuit.

5. On information and belief and at all times material hereto, *in rem* Defendant Vessel was a 2005 year model Chaparral "Signature 24" vessel of 24' in length, North Carolina registration number **NC 4542 DA**, and Hull ID# **# FGBF1746A505**, with a single 250 gas engine.

6. The Vessel was, at the time of the Run-Down, and is now, undocumented.

7. On information and belief, the Vessel was at the time of the Run-Down and is now, owned by Defendant Dycus.

8. On information and belief, the Vessel is and was at all times material to this Complaint, within the Southern Division of the United States District Court for the Eastern District of North Carolina.

9. At all times material hereto, the Vessel was operating on the Inland Navigable Waters of the United States and within the Southern Division of the United States District Court for the Eastern District of North Carolina.

10. Venue is proper in the Southern Division of the United States District Court for the Eastern District of North Carolina.

11. This Court has personal jurisdiction over the parties hereto.

12. This Court has subject matter jurisdiction over the maritime tort alleged herein.

## ADDITIONAL FACTS

13. The allegations in the paragraphs above are re-alleged as if fully set forth herein.

14. On or about 11 June 2018 , Defendant Dycus operated the Vessel in a generally westerly direction in the Atlantic Intracoastal Waterway in Brunswick County, North Carolina, near 49th St. in Oak Island, NC, Inland Waters of the United States (the "Voyage").

15. The Voyage was a return trip to St. James Marina following Defendant Dycus' dinner at "Joseph's Italian Bistro, Inc. operating as "Joseph's" restaurant.

16. Aboard the Vessel for the Voyage were at least Defendant Dycus, and passengers Franklin Wren, Vicki Wren and Vicky Hanes.

17. On information and belief, Defendant Dycus was operating the Vessel as her Captain for the Voyage.

18. On information and belief, Defendant Dycus admitted to the N.C. Wildlife officer who investigated the accident that he had been drinking alcoholic beverages shortly before operating the Vessel as her Captain for the Voyage.

19. On information and belief, Defendant Dycus had been drinking alcohol beverages within an hour of operating the Vessel as her Captain for the Voyage.

20. On information and belief, Defendant Dycus was too intoxicated to safely operate a motor vessel at the time of the Run-Down.

21. Plaintiff and a friend, Bradley Minnillo departed from Oak Island municipal boat ramp at N.E. 55th St. in Oak Island, North Carolina to go kayaking (the "Kayak Trip").

22. On the Kayak Trip, Plaintiff paddled a bright neon green kayak.

23. On the Kayak Trip, Mr. Minnillo paddled a bright yellow kayak.

24. While on the Kayak Trip, Plaintiff observed the Vessel headed in his direction, and Plaintiff moved closer to one edge of the Intracoastal Waterway (ICW), allowing ample room for the Vessel to safely pass between both kayaks. Minnillo moved to the opposite edge of the ICW. When the Vessel was close to Plaintiff, but not traveling in such a line that it might endanger him, the Vessel suddenly increased its speed and turned directly toward Plaintiff and his kayak.

25. The Vessel collided with Plaintiff's kayak.

26. At the time the Vessel collided with Plaintiff's kayak, it was traveling in excess of 25 mph.

27. At the time of the Run-Down, it was not raining, visibility was good and there was still plenty of daylight such that Plaintiff could plainly see and be seen by approaching vessels and others from hundreds of yards away.

28. At the time of the Run-Down, the Vessel did not have her running lights on, nor were they necessary given the lighting conditions.

29. On information and belief, Defendant Dycus did not see Plaintiff or his kayak before running them down, and only realized he had collided with something after feeling the impact of the Run-Down.

30. Defendant Dycus admitted to the investigating officer that he did not see Plaintiff or his kayak before running them down.

31. On information and belief, during the Voyage and until Plaintiff was injured in the Run-Down as described herein, Dycus was at the helm and steering the Vessel.

32. When the Vessel ran over Plaintiff's kayak, it sucked him beneath the Vessel's hull, and the Vessel propeller sliced deeply through Plaintiff's right arm, right side, the front and back of Plaintiff's body, and other areas, nearly severing his right arm. The kayak was almost cut in half. The impact also broke Plaintiff's rips, punctured a lung and lacerated his liver.

33. Plaintiff experienced immediate, excruciating pain, light-headedness, physical impairments, numbness and moments of unconsciousness as he began to bleed out. Plaintiff reasonably believed he was going to die.

34. After running down Plaintiff, Defendant Dycus left the scene of the Run-Down, while Minnillo screamed at the Vessel to stop and turn back.

35. Defendant Dycus and Vessel eventually returned to the scene some minutes later, and then circled Plaintiff for another period while deciding whether to render assistance, but refused to take Plaintiff onboard.

36. Only after protracted pleas by Plaintiff and Minnillo did Defendant Dycus agree to take Plaintiff onto the rear swim platform.

37. The USCG then responded to the Run-Down.

38. Plaintiff was taken to New Hanover County Regional Medical Center where emergency treatment was begun, and Plaintiff was given numerous blood transfusions to attempt to save his life.

39. As a proximate result of the Run-Down, Plaintiff suffered at least the following past and future injuries:

    a. Right, open, severely comminuted proximal humerus fracture with large overlying soft tissue injury;

    b. grade 2 liver laceration;

    c. right open humeral shaft fracture;

    d. right open medial condyle fracture;

    e. right open olecranon tip fracture;

    f. right open coronoid tip fracture;

    g. right radial nerve transection;

    h. right ulnar nerve transection;

    i. Three deep complex lacerations of the right posterior arm, measuring 28 cm long, 16 cm long, and 14 cm long all involving transections of multiple muscles and nerves;

j. right displaced scapular fracture;

k. multiple rib fractures, including right 7, 8 and 9, with 8 displaced

l. right pneumothorax;

m. and other injuries as will be shown at trial.

40. Following the Run-Down, Plaintiff was treated for his numerous, debilitating injuries.

41. Plaintiff has been diagnosed with numerous permanent physical injuries, including, but not limited to:

   a) Permanent loss of all meaningful use of his right arm, hand, wrist and shoulder;

   b) Permanent, horrible scarring and disfigurement;

   c) Terrifying nightmares, Acute Stress Disorder, possible PTSD and other mental anguish and injury; and

   d) Such other injuries as will be shown at trial

42. All of the foregoing have required, and will in the future, continue to require, medical treatment and medication, which itself will cause side effects.

43. To address some of his injuries, Plaintiff has undergone at least 6 serious and life-altering surgeries thus-far, with post-operative hallucination. More surgery is likely to be required

44. As a direct, foreseeable and proximate result of the Run-Down, Plaintiff will require further surgeries and has suffered, continues to suffer and will continue to suffer from permanent severe pain, impairment, stiffness, lost range of motion, fatigue, sleeplessness, nightmares, irritability, depression, anxiety, concentration loss, mood swings and other symptoms, which cause him pain, suffering and diminish his overall quality of life and earning capacity.

45. As a further direct, foreseeable and proximate result of the Run-Down, Plaintiff has lost valuable past and future income, career prospects, earning capacity, and other future financial and personal prospects, and has had to take whatever make-work he can as a result of the Incident.

## First Cause of Action – Negligence of Dycus

46. The allegations in the foregoing paragraphs above are re-alleged as if fully set forth herein.

47. Defendant Dycus was negligent, including in the operation of the Vessel, in the following particulars, among others:

    a. By failing to operate the Vessel at a safe speed in light of the limited speed maneuvering capability of unpowered vessels in the area, light, sea conditions and other factors;

    b. By failing to keep the Vessel under proper control and on a safe bearing, considering its speed and course, the proximity of recreational vessels in the area, and other factors;

    c. By failing to provide for and keep a proper lookout for other vessels in the path of the Vessel;

    d. By operating the Vessel without exercising reasonable care under the circumstances, including, *inter alia*, by not looking where he was going, operating in a bow-up condition in such a way as to obstruct his vision, traveling at high speed, changing direction erratically, having no running lights operating (if necessary), under the influence of alcohol ingested just before such operation of a motor vessel, and ignoring lookout duties while underway at a

high speed, all an area of known recreational traffic, and other factors as will be shown at trial;

e. By failing to use all available means appropriate to the prevailing circumstances and conditions to determine if a risk of collision existed;

f. By failing to alter course and avoid the collision despite sufficient sea-room to do so;

g. Such other neglects as will be shown at the trial of this matter.

48. Plaintiff's injuries and symptoms described above were a direct, foreseeable and proximate result of Defendant's negligence.

49. Defendant, for his negligence above, and the Vessel, having been operated by Defendant Dycus at the time of the Run-Down, and as its owner, are jointly and severally liable to Plaintiff for his injuries.

## **PRAYER**

WHEREFORE, Plaintiff prays:

a. That process of arrest issue and be served on the Vessel as provided by Supplemental Admiralty Rule C, with all persons asserting any right of possession or ownership interest in the Vessel cited to appear and answer the matters herein;

b. That judgment be entered for Plaintiff and against the Vessel and Defendant, jointly and severally, in an amount in excess of $6,000,000.00, exclusive of interest and costs, as demonstrated at trial for his past, present and future damages, plus pre-judgment and post-judgment interest, collection and recovery costs, attorneys' fees, and other amounts as are or may become due and owing;

c. That the Vessel be condemned and sold and the proceeds applied to such judgment;

d. For the costs of this action.

e. That this Honorable Court grant Plaintiff such other and further relief as the Court may deem just and proper under the circumstances.

Dated: 21 November 2018

                                          **CLARK, NEWTON & EVANS, P.A.**
*Counsel for Plaintiff*
By:
/s/ Don T. Evans, Jr.
NC Bar No. 19003
/s/ Seth P. Buskirk
NC Bar No. 36664
509 Princess St.
Wilmington, North Carolina 28401
Telephone: (910) 762-8743
Facsimile: (910) 762-6206
dte@clarknewton.com
spb@clarknewton.com

VERIFICATION and DECLARATION (28 USC § 1746)

I, Scott Lindsey, declare under the penalty of perjury the following:

I have read the foregoing VERIFIED COMPLAINT and know the contents thereof. The facts alleged in the foregoing VERIFIED COMPLAINT are true and correct to the best of my knowledge except those things alleged on information and belief, and as to them, I believe them to be true.

_____(SEAL)
Scott Lindsey

Date: 11/20/18